# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| **LYDIA RUFFIN,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | )  Case No. 4:10CV1736 HEA |
| | ) |
| **CAROLYN W. COLVIN,**[1] | ) |
| **Acting Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff's request for judicial review under 28 U.S.C. § 405(g) of the final decision of Defendant denying Plaintiff's applications for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq,* and her application for supplemental security income (SSI) under Title XVI of the Act, 42 U.S.C. § 1381, *et seq.*  For the reasons set forth below, the Court will affirm the Commissioner's denial of Plaintiff's applications.

### Facts and Background

Plaintiff was 50 years old at the time of the hearing.  She completed 10th or

---

[1]  Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the Defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

11th grade in high school and does not have a GED. The ALJ found Plaintiff had the severe impairments of: congestive heart failure, cardiomyopathy, hypertension, hypothyroidism, and hyperlipidemia controlled by medication with status-post defibrillator insertion, and probable borderline intellectual functioning. At the May 12, 2009 hearing, Plaintiff testified that she lives with her husband in an apartment. Plaintiff testified that she attended special ed for all classes and that the last time she worked, was in 2007 in housekeeping. Plaintiff also testified she had a defibrillator installed on 11/16/06. She was also admitted to the hospital in 2007. She quit working her housekeeping job because she became ill. Plaintiff testified she did not have a physician at the time of the hearing. Her primary doctor had been treating her for high blood pressure. Plaintiff testified that she can no longer keep up the pace of her former housekeeping job. On a typical day, Plaintiff testified that she relaxes and watches television. She does not cook much, does not do laundry and cannot "run" like she used to when she wants to play with her grandchildren. She can write a little and read some, but testified that she is "not good on reading." She is on Medicaid, but is unable to afford the spend-down to receive benefits. She has never been treated by a psychiatrist or psychologist. Plaintiff testified she can be on her feet 18-20 minutes and that her legs bother her if she walks too much.

The vocational expert classified Plaintiff's past work as light and unskilled

work.

Plaintiff's application for social security and supplemental security income benefits under Titles II, 42 U.S.C. §§ 401, *et seq*. And XVI of the Act, 42 U.S.C. § 1381, *et seq* were denied, and Plaintiff sought a hearing by an Administrative Law Judge. On December 1, 2009, the ALJ issued an unfavorable decision. On July 17, 2010, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. Thus, the decision of the ALJ stands as the final decision of the Commissioner.

## Standard For Determining Disability

The Social Security Act defines as disabled a person who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); see also *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir.2010). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him,

or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(B).

A five-step regulatory framework is used to determine whether an individual claimant qualifies for disability benefits. 20 C.F.R. §§ 404.1520(a), 416.920(a); see also *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir.2011) (discussing the five-step process). At Step One, the ALJ determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I); *McCoy*, 648 F.3d at 611. At Step Two, the ALJ determines whether the claimant has a severe impairment, which is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities"; if the claimant does not have a severe impairment, he is not disabled. 20 C.F.R. §§ 404.1520(a) (4)(ii), 404.1520(c), 416.920(a)(4)(ii), 416.920(c); *McCoy*, 648 F.3d at 611. At Step Three, the ALJ evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the ALJ proceeds with the rest of the five-step process. 20 C.F.R. §§ 404.1520(d), 416.920(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the ALJ must assess the claimant's "residual functional

capacity" ("RFC"), which is "the most a claimant can do despite [his] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir.2009) (citing 20 C.F.R. § 404.1545 (a) (1)); see also 20 C.F.R. §§ 404.1520(e), 416.920(e). At Step Four, the ALJ determines whether the claimant can return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his past relevant work, he is not disabled; if the claimant cannot, the analysis proceeds to the next step. *Id.*. At Step Five, the ALJ considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir.2012).

## ALJ's Decision

Applying the foregoing five-step analysis, the ALJ in this case determined at Step One that Plaintiff had not engaged in substantial gainful activity since March 17, 2007, the alleged onset date. The ALJ noted, however that Plaintiff did work steadily at her usual kind of job from October 2, 2007 to March 2, 2008. At Step Two, the ALJ found that Plaintiff had the following severe impairments: congestive heart failure, cardiomyopathy, hypertension, hypothyroidism, and hyperlipidemia controlled by medication with status-post defibrillator insertion, and probable borderline intellectual functioning. At Step Three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the impairments in the listings.

Prior to Step Four, the ALJ found that Plaintiff had the residual functional capacity to perform the full range of work except probably for lifting or carrying more than 20-25 pounds and doing more than simple, repetitive tasks, as defined in 20 CFR 404.1545 and 416.945. At Step Four, the ALJ determined that Plaintiff was capable of performing her past relevant work as a commercial housekeeper. The ALJ, therefore was not required to proceed to Step Five. The ALJ concluded that Plaintiff had not been under a disability as defined in the Act.

## Standard For Judicial Review

The Court's role in reviewing the Commissioner's decision is to determine whether the decision "'complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole.'" *Pate–Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir.2009) (quoting *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir.2008)). "Substantial evidence is 'less than preponderance, but enough that a reasonable mind might accept it as adequate to support a conclusion.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir.2012) (quoting *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir.2009)). In determining whether substantial evidence supports the Commissioner's decision, the Court considers both evidence that supports that decision and evidence that detracts from that decision. *Id.* However, the court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir.2006)). "If, after reviewing the record, the court finds it of courseis possible to draw two inconsistent positions from the evidence and one of those positions represents the AL's findings, the court must affirm the AL''s decision.'" *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir.2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir.2005)). The Court should disturb the administrative decision only if it falls

outside the available "zone of choice" of conclusions that a reasonable fact finder could have reached. *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir.2006).

## Discussion

In her appeal of the Commissioner's decision, Plaintiff makes the following arguments: (1) The ALJ failed to fully evaluate the possibility that Plaintiff met or equaled Listing 12.05; (2) The ALJ erred by failing to clarify Dr. Sale's opinions.

**Listing 12.05**

Plaintiff argues that the ALJ failed fully evaluate the possibility that Plaintiff met or equaled Listing 12.05. "The claimant has the burden of proving that his impairment meets or equals a listing." *Carlson v. Astrue*, 604 F.3d 589, 593 (8th Cir.2010). "To meet a listing, an impairment must meet all of the listing's specified criteria." *Id.* (citing *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir.2004)). In her decision, the ALJ incorrectly stated that a formal diagnosis of mental retardation was required. The Eighth Circuit has stated that although a formal diagnosis of mental retardation is not required under Listing 12.05, the requirements of the introductory paragraph are mandatory. *Maresh v. Barnhart*, 438 F.3d 897, 899 (8th Cir.2006). The ALJ's error was harmless, however because her finding that Plaintiff failed to meet all of the listing's specified criteria is supported by the record.

- 8 -

Listing 12.05's introductory paragraph defines mental retardation as "significantly, subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, i.e., the evidence demonstrates or supports onset of impairment before age 22. 20 C.F.R. Pt. 404, Subpt. P, App'x 1, 12.05. If an impairment satisfies the diagnostic description in the introductory paragraph and the criteria in paragraphs A, B, C, or D, then the Commissioner will find that the claimant's impairment meets the listing criteria. 20 C.F.R. Pt. 404, Subpt. P, App'x 1, 12.00. "Thus, in order to qualify under Listing 12.05(C), [Plaintiff] was required to show (1) significantly subaverage general intellectual functioning with deficits in adaptive functioning, (2) an onset of that impairment prior to age twenty-two, (3) a valid IQ score between 60 and 70, and (4) an additional impairment imposing a significant work-related limitation of function."[2] *Best v. Astrue*, No. 2:12–CV–7 LMB, 2013 WL 1163464 at *12 (E.D.Mo. March 20, 2013).

As Defendant correctly argues, the only verbal, performance, or full scale IQ testing was conducted when Plaintiff was 13, over 30 years ago.  Listing § 112.00 discusses validity of IQ scores for children:

> IQ test results must also be sufficiently current for accurate

---

[2] Plaintiff cannot satisfy the requirements of Subparagraphs A, B, or D.

> assessment under 112.05. Generally, the results of IQ tests tend to stabilize by the age of 16 Therefore, IQ test results obtained at age 16 or older should be viewed as a valid indication of the child's current status, provided they are compatible with the child's current behavior. IQ test results obtained between ages 7 and 16 should be considered current for 4 years when the tested IQ is less than 40, and for 2 years when the IQ is 40 or above. . . .

20 C.F.R. Part 404, Subpart P, Appendix 1, § 112.00(D)(10). Because Plaintiff's IQ score was obtained between the ages of 7 and 16, and valid only two years, there is no valid verbal, performance, or full scale IQ of 60 through 70. Indeed, Dr. Brown, the consulting examiner, assessed Plaintiff's IQ at 71.

Moreover, Plaintiff failed to produce any evidence of impaired adaptive functioning. Adaptive functioning is not defined in Listing 12.05. The Court, however, has used the definition of adaptive functioning contained in the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (DSM–IV–TR). See *Quarles v.. Colvin*, No. 4:11–CV–1854 TCM, 2013 WL 1197115 at *18 (E.D.Mo. March 25, 2013); *Weatherspoon v. Massanari*, 228 F.Supp.2d 1041, 1047 (E.D.Mo.2002). According to the DSM–IV–TR,

> Adaptive functioning refers to how effectively individuals cope with common life demands and how well they meet the standards of personal independence expected of someone in their particular age group, sociocultural background, and community setting. Adaptive functioning may be influenced by various factors, including education, motivation, personality characteristics, social and vocational opportunities, and the mental disorders and general

> medical conditions that may coexist with Mental Retardation. Problems in adaptation are more likely to improve with remedial efforts than is the cognitive IQ, which tends to remain a more stable attribute.

Diagnostic and Statistical Manual of Mental Disorders, 40 (4th ed. Text Rev.2000) ("DSM–IVTR"). The ability to perform gainful activity is not relevant, if the claimant otherwise meets the requirements of Listing 12.05. *Cheatum v. Astrue*, 388 Fed. App'x 574, 577 n. 3 (8th Cir.2010). "It is relevant, however, to whether [she] has shown the deficits in adaptive functioning necessary to meet that listing." *Id*. The record establishes that Plaintiff was not only able to perform gainful activity, but had a good work record consistently for a long period of time and could read, write, handle money, care for her personal needs, clean her apartment, leave her apartment alone, shop, socialize and attend church. Dr. Brown contrasted Plaintiff's inability to answer the simplest of questions with her ability to explain in detail how she navigated the public transit system to get to the examination.

    Plaintiff never sought or received any type of treatment or vocational assistance based on her alleged mental issues prior to applying for benefits. *Clay v. Barnhart,* 417 F.3d 922, 929 (8th Cir. 2005).

**Dr. Sale's opinions**

The ALJ discredited Dr. Sale's opinion regarding Plaintiff's heart function and was not required to seek clarification from Dr. Sale because his report was inconsistent with his medical records during that time period. *See Clevenger v. Soc. Sec. Admin.,* 567 F.3d 971, 975 (8th Cir.2009) (discrediting a physician's opinion where it was inconsistent with earlier records of treating physicians). Dr. Sale's narrative report indicates that Plaintiff's physical examination was unremarkable and she was asymptomatic. Although Plaintiff argues that on a particular day being asymptomatic means neither good nor bad, Plaintiff exhibited no signs at that time of a disabling condition, which is demonstrative of inconsistencies in Dr. Sale's opinion and his report. Overall, the ALJ properly discredited Dr. Sale's opinion because the medical evidence of record did not support a total disability finding. After careful review, the Court finds the ALJ's decision to discount Dr. Sale's conclusions was appropriate, and her failure to seek clarification was not error.

## Conclusion

After careful examination of the record, the Court finds the Commissioner's determination is supported by substantial evidence on the record as a whole, and therefore, the decision will be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner of Social Security is **affirmed**.

A separate judgment in accordance with this Opinion, Memorandum and Order is entered this same date.

Dated this 12th day of September, 2013.

_____
   **HENRY EDWARD AUTREY**
**UNITED STATES DISTRICT JUDGE**